# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ALISHIA S. DEWBRE,<br><br>      Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | No. 18-CV-4055-LRR-KEM<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Alishia S. Dewbre seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Dewbre argues that the administrative law judge (ALJ), Kristi Bellamy, erred by failing to provide good reasons for discounting the mental residual functional capacity (RFC) opinion of a consultative examiner and by failing to "adequately consider the combined effects of [her] impairments, including her potential conversion disorder." Doc. 11. Dewbre also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **affirming** the Commissioner's decision.

## I. BACKGROUND[1]

At her therapist's recommendation, Dewbre filed an application for SSI benefits on February 14, 2014, after a three-day hospitalization due to being suicidal. AR 133, 458, 647, 754. She later amended her onset date to the date the application was filed.

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 10).

AR 17. Dewbre's SSI application was denied initially in May 2014 and on reconsideration in August 2014. AR 132-154.

She requested a hearing before an ALJ, and a video hearing was held on September 24, 2015. AR 69-70. A written opinion issued on November 18, 2015, denying her request for benefits, but the Appeals Council vacated that opinion and remanded for further consideration. AR 158-169, 177-179. A second video hearing, before a different ALJ, was held on July 10, 2017. AR 92-93. Dewbre and a vocational expert testified. AR 92-93. On July 31, 2017, the ALJ issued a written opinion following the familiar five-step process outlined in the regulations[2] and once again denied Dewbre's request for benefits. AR 17-29. The ALJ found that Dewbre suffers from the severe impairments of fibromyalgia, obesity, schizoaffective disorder, and panic disorder. AR 20. To evaluate whether Dewbre's impairments prevented her from performing her past work (step four) or other work (step five), the ALJ determined Dewbre's RFC[3]:

> [T]he claimant has the [RFC] . . . to perform less than a full range of light work . . . . She can lift/carry 20 pounds occasionally, 10 pounds frequently, sit up to 6 hours in an 8-hour workday, stand/walk up to 6 hours in an 8-hour workday. She can occasionally perform postural activities except never climb ladders, ropes, or scaffolds. She is limited to simple, routine, repetitive tasks and simple work-related decisions. She can tolerate occasional changes in a routine work setting. She can have occasional interaction with supervisors. She can have brief and superficial interaction

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

with co-workers and the general public. The claimant would be absent from work 1 day a month due to anxiety.

AR 22. Based on her RFC, age, education, and work experience, the ALJ found that a significant number of jobs existed that Dewbre could perform—specifically, as a housekeeping cleaner, small-products assembler, or conveyor-line bakery worker. AR 28-29. The ALJ thus determined that Dewbre was not disabled during the relevant time period (February 14, 2014, to July 31, 2017). AR 29.

The Appeals Council denied Dewbre's request for review on April 23, 2018 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. § 416.1481**. Dewbre filed a timely complaint in this court (Docs. 1, 3). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 11-13), and the Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## *II. DISCUSSION*

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Dewbre argues that the ALJ did not give a good reason for discounting the mental RFC opinion of one-time consultative examiner Timi Jordison, PhD, which resulted in an RFC unsupported by substantial evidence. Dewbre also argues that the ALJ erred in determining RFC because she did not adequately consider the combined effects of her

3

mental and physical symptoms, including any potential conversion disorder. Finally, Dewbre argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution.

### *A. Medical Opinion*

When determining a claimant's RFC, the ALJ considers "medical opinions . . . together with the rest of the relevant evidence." **20 C.F.R. § 416.927(b)**. The ALJ considers the following factors to determine the weight to assign a medical opinion:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. § 416.927(c)**).

Dewbre challenges the weight the ALJ assigned to Dr. Jordison's opinion. Dr. Jordison met with Dewbre once on June 30, 2017, for a consultative examination at the request of Dewbre's disability attorney. AR 1162. After the examination, Dr. Jordison evaluated Dewbre's mental RFC, opining that she would have difficulties in every area of mental functioning (understanding and memory; sustained concentration and persistence; and social interaction and adaptation).[4] AR 1162-1171.

---

[4] Specifically, Dr. Jordison found that Dewbre would frequently be unable (for five to six hours of an eight hour workday) to remember locations and work-like procedures; maintain attention and concentration for extended periods of time; perform activities within a schedule; maintain regular attendance; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond

The ALJ considered Dr. Jordison's opinion when determining Dewbre's RFC but assigned it limited weight. AR 26-27. The ALJ noted that Dr. Jordison "rel[ied] heavily on [Dewbre's] self-reported limitations in forming his opinion" and that Dewbre "reported an extensive range of psychologically based symptoms" to Dr. Jordison "that she has not reported to treatment providers." AR 26. The ALJ also found the extreme limitations found by Dr. Jordison were inconsistent with Dewbre's activities of daily living and with other evidence in the record. AR 26-27.

In response, Dr. Jordison submitted a supplemental opinion on December 1, 2017. AR 7-11. Dr. Jordison confirmed that her conclusions "rel[ied] . . . heavily on [Dewbre's] self-reported limitations," as found by the ALJ, but noted that she also relied on her review of the treatment records. AR 7. Dr. Jordison also asserted that extreme limitations in mental functioning were not inconsistent with Dewbre's activities of daily living, noting that although Dewbre cares for young children, "she has the help of her husband," and that "[h]er daily self-care and caring for the children does not necessarily require a rigid schedule or interacting with several other adults or the public on a daily basis." AR 7.

The ALJ gave good reasons supported by substantial evidence for discounting Dr. Jordison's opinion. First, the ALJ could discount the limitations found by Dr. Jordison because she relied heavily (at least in part) on Dewbre's subjective complaints, which the ALJ did not fully credit (AR 23). *See* **Vance v. Berryhill**, 860 F.3d 1114, 1121 (8th Cir. 2017) ("Because the ALJ reasonably concluded that [claimant's] statements lacked credibility, [the ALJ] could discount [the treating source's] opinion to the extent that it

---

appropriately to changes in the work setting. AR 1169-71. He found that she would occasionally be unable (for two to three hours of an eight-hour work day) to understand and remember short, simple instructions; be punctual within customary tolerances; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. AR 1169-71.

relied on [claimant's] subjective complaints."); *see also* **Perrymore v. Colvin**, 607 F. App'x 614, 615 (8th Cir. 2015) (per curiam) (noting that a "consulting physician's opinion deserves no special weight, and is entitled to less weight when based largely on claimant's subjective complaints" (citing **Kirby**, 500 F.3d at 709)).

The ALJ could also appropriately consider Dewbre's minimal limitations in her activities of daily living. *See* **Hacker v. Barnhart**, 459 F.3d 934, 937-38 (8th Cir. 2006) (holding that the ALJ may "diminish[] the weight given" to a medical opinion based on a finding that it is inconsistent with the claimant's activities of daily living). Substantial evidence supports the ALJ's finding that Dewbre could prepare simple meals such as sandwiches, hamburger helper, and microwavable frozen meals; manage her appointments and medications through a phone alarm and pill organizer; pay bills and count change; maintain her personal hygiene and grooming; shop, including at Walmart, "without any documented difficulty getting along with the store clerks or other customers"; attend her son's Cub Scout meetings, although it caused increased anxiety; go on bike rides with her neighbor; lift weights; watch television; crochet; put puzzles together; use Facebook to communicate with others; and perform household chores such as dishes, sweeping, vacuuming, and laundry, by using a list to stay on task. AR 18-21, 24-26, 81, 115, 333-36, 487, 508, 526, 544, 717, 911, 959, 972, 993, 995, 1057, 1101 (also reported enjoying baking), 1125. The ALJ also noted that Dewbre was able to travel to Oregon for her father's funeral and that she attended church regularly (often enough to have a friend she met through church and to have people from church offering her assistance in transportation and in paying rent). AR 21, 26, 486, 959, 1001. The ALJ recognized that Dewbre reported being "overwhelmed by public transport," so she received rides from her husband and others, but noted that Dewbre's inability to drive herself is not because of anxiety, but because of fines preventing her from obtaining a driver's license. AR 25, 335. Substantial evidence also supports the ALJ's determination that Dewbre cares for her young children, often without her husband's help. *See* AR 25, 333, 480, 485, 544, 556, 743, 911, 971-72, 1000, 1095, 1101. The record also reflects

several instances of Dewbre reporting that she took the children for walks, sometimes to the park. AR 743, 959, 1020, 1022, 1101. Substantial evidence supports the ALJ's determination that Dewbre's activities of daily living are inconsistent with the extreme mental limitations found by Dr. Jordison. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 925, 932 (8th Cir. 2010) (substantial evidence supported that disability due to social phobia, depression, and anxiety was inconsistent with claimant's ability to care for herself and a pet, prepare meals, "do laundry, change sheets, clean her house, iron clothing, vacuum, wash dishes, drive her car, run errands, go out alone, take out trash, wash her car, go shopping, manage her finances, watch television, and read occasional self-help books"); *Hacker*, 459 F.3d at 937-38 (substantial evidence supported that claimant's ability to "follow TV shows and her son's sporting events, plan and maintain three gardens, drive a car, and fly to Denver to babysit her young nieces on a regular basis" was inconsistent "with a marked limitation of function in concentration, persistence, or pace").

The ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Jordison's RFC opinion.[5]

### B. *Consideration of Impairments*

Dewbre testified at the July 2017 hearing that she suffers from "bone deformities" on her "pelvic bone" and spine that "caus[e] one leg to be longer than the other" and that result in leg pain and falls if she overuses her legs. AR 108. The ALJ noted that "[a]lthough the claimant asserted at the hearing that she has started to fall down because of pain, that is not established by the medical evidence." AR 24. Dewbre takes issue

---

[5] To the extent Dewbre argues (in one sentence) that some medical evidence does not support the ALJ's determination of Dewbre's mental limitations (Doc. 11 at 6), the ALJ could rely on the opinions of the state agency psychological consultants and an independent review of the medical evidence to form Dewbre's RFC (AR 23, 138-39, 150-52). *See Stormo v. Barnhart*, 377 F.3d 801, 807-808 (8th Cir. 2004); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995.

7

with this finding, arguing that her "intermittent leg weakness and other neurologic complaints" are caused by a conversion order. Doc. 11 at 6. Dewbre argues that the ALJ erred in failing to consider "the combination of [her] apparent conversion disorder with her other mental and physical impairments." Doc. 11 at 6-7.

Dewbre recognizes that she was never diagnosed with conversion disorder (Doc. 11 at 7), which "causes [a person] to believe that [the person's] physical ailments are more serious than the clinical data would suggest" and to experience "physical problems as worse than they may in fact be, and . . . [with an inability] to control this response." *Easter v. Bowen*, 867 F.2d 1128, 1129 (8th Cir. 1989). Dewbre points to treatment notes showing that her providers told her more than once that imaging showed she did not have any pelvic bone deformities, but she continued to tell other providers that she had pain caused by a pelvic abnormality (as well as testifying to a pelvic bone deformity at the hearing). *See* AR 766, 912, 1109, 1145, 1164. Dewbre also relies on treatment notes in which providers suggested her physical problems were caused or exacerbated by stress or other mental-health issues. *See, e.g.*, AR 662-666, 951, 954, 1125.

The ALJ sufficiently considered Dewbre's impairments in combination, including the effect of her physical health on her mental health and vice versa. Contrary to Dewbre's assertions, the ALJ did not discount Dewbre's complaints of leg pain or "other neurologic complaints" based solely on a lack of imaging or other objective medical evidence;[6] rather, the treatment records (the medical evidence) do not reflect that Dewbre complained of neurological issues very often, and they would have a limiting effect on her RFC. Treatment records show that Dewbre complained of neurological arm or leg weakness just four times—in April 2015, January 2016, March 2016, and July 2016— and that she far more often denied suffering from any such issues. *Compare* AR 716,

---

[6] Dewbre points to the ALJ's statement at the hearing that the imaging showed no evidence of back pain, but in response, her attorney argued that there was tender-point evidence showing fibromyalgia, which the ALJ ultimately found Dewbre suffered from. AR 20, 24, 109-110.

894, 946-48, 953-54, *with* AR 575, 631, 669, 674, 889, 960, 1109, 1143. Additionally, although Dewbre reported suffering symptoms that she believed were consistent with a transient ischemic attack, or mini-stroke, in August and December 2014 and January 2015, and repeatedly told providers about this potential neurological issue, she confirmed in March 2016 that over the past few years, she had only suffered these symptoms three to four times for a few hours and that the last "episode" had been in January 2015. AR 556, 632, 662, 750, 892, 894-97, 902, 957.

The cases relied upon by Dewbre are distinguishable because here, no provider diagnosed her with conversion disorder, *see* ***Nowling v. Colvin***, 813 F.3d 1110, 1120 (8th Cir. 2016); ***Easter***, 867 F.2d at 1129; and because the ALJ considered the effects of Dewbre's psychological condition on her RFC, recognizing that Dewbre's mental impairments were severe and "[m]ore significant" in terms of causing limitations than her physical impairments (AR 24), *see* ***Delrosa v. Sullivan***, 922 F.2d 480, 485-86 (8th Cir. 1991) (ALJ did not properly consider combined effects of claimant's mental and physical impairments because ALJ entirely rejected treating-source diagnosis of "chronic anxiety depression"; ALJ directed, on remand, to consider possible effects of claimant's psychological condition in evaluating claimant's subjective complaints); ***Cunningham v. Apfel***, 222 F.3d 496, 501-02 (8th Cir. 2000) (ALJ failed to consider claimant's significant mental limitations, demonstrated by the record, including "mental illness, borderline intellectual functioning, memory loss, and loss of cognitive ability," and disregarded medical opinions that claimant suffered from disabling depression). Review of the treatment records supports the ALJ's determination that Dewbre's pain and other physical symptoms were not disabling (whether the result of physical or mental impairments), and substantial evidence also supports the ALJ's conclusion that Dewbre's activities of daily living (discussed in the preceding section) were inconsistent with disabling physical limitations.

9

### C. Appointments Clause Challenge

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia*, 138 S. Ct. at 2051.

The Supreme Court recently held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) are "inferior officers" subject to the Appointments Clause, as they "exercise[] significant authority pursuant to the laws of the United States." *Id.* The Court relied on *Freytag v. Commissioner*, 501 U.S. 868 (1991), in which it held special trial judges of the United States Tax Court were inferior officers subject to the Appointments Clause, noting that both SEC ALJs and Tax Court special trial judges: (1) serve career appointments "to a position created by statute, down to its 'duties, salary, and means of appointment'"; (2) take testimony during hearings and may take pre-hearing depositions; (3) administer oaths, rule on motions, and generally regulate the court during a hearing; (4) rule on the admissibility of evidence; (5) have the power to enforce compliance with discovery, including to punish contempt by excluding people from the courtroom; and (6) issue opinions detailing factual findings and legal conclusions and ordering appropriate remedies. 138 S. Ct. at 2052-54 (quoting *Freytag*, 501 U.S. at 878). The Court ordered that the petitioner receive a new administrative hearing from a properly appointed official, noting that the petitioner "timely challeng[ed]" the validity of the appointment before the administrative agency. *Id.* at 2055. The petitioner had not raised the Appointments Clause challenge to the ALJ at any point during the "nine days of testimony and argument," but after the ALJ rendered an unfavorable decision, the petitioner appealed to the SEC and argued "that the administrative proceeding was invalid because [the ALJ] had not been constitutionally appointed." *Id.* at 2050.

Relying on the reasoning in *Lucia*, Dewbre argues that Social Security ALJs are inferior officers subject to the Appointments Clause and that her case should be remanded for a new hearing before a constitutionally appointed ALJ. Dewbre never raised this issue during the administrative proceedings. Thus, the Commissioner argues that Dewbre has forfeited her Appointments Clause challenge.

In *Freytag*, the petitioners challenged the appointment of the special trial judge for the first time on judicial review—indeed, the petitioners had consented in the administrative proceedings to trial by a special trial judge. 501 U.S. at 871-72. Before the Supreme Court, they argued that Appointments Clause challenges as a class cannot be forfeited or waived. *Id.* at 893 (Scalia, J., concurring). The majority opinion did not address this argument, instead "exercis[ing] its discretion to consider" the Appointments Clause challenge (which it classified as a "nonjurisdictional structural constitutional objection[]"). *Id.* at 878-79 (majority); *id.* at 893 (Scalia, J., concurring). The Court noted the Appointments Clause challenge was "neither frivolous nor disingenuous" and went "to the validity of the Tax Court proceeding." *Id.* at 879 (majority). The Court therefore concluded this was "one of those rare cases in which [a court] should exercise [its] discretion." *Id.* The Eighth Circuit has interpreted *Freytag* as creating a discretionary rule in which "a reviewing court generally is permitted (though not obliged) to hear a belated appointments clause challenge." *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795 (8th Cir. 2013); *see also Jones Bros., Inc. v. Sec. of Labor, Mine Safety, & Health Admin.*, 898 F.3d 669, 677-78 (6th. Cir. 2018) (excusing forfeiture of Appointments Clause challenge when the plaintiff noted a circuit split on the issue before the administrative agency (Federal Mine Safety and Health Review Commission) but declined to "press" the issue); *Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 699-700 (10th Cir. 2018) (holding claimant forfeited Appointments Clause challenge based on *Lucia* by failing to raise it to the agency (the Department of Labor Benefits Review Board)); *Kabani & Co., Inc. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018)

("[P]etitioners forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency [the SEC].").

The vast majority of courts to address this issue have held that the claimant forfeited his or her *Lucia*-based Appointments Clause challenge by failing to raise it to the Social Security Administration, and the courts have declined to excuse the forfeiture. *See, e.g., Morrow v. Berryhill*, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); *Kline v. Berryhill*, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); *Hutchins v. Berryhill*, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); *Diane S.P. v. Berryhill*, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); *Valasquez ex rel. Valasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). A few courts, however, have found Social Security claimants do not need to raise Appointments Clause challenges to preserve the argument for judicial review or have otherwise excused the forfeiture. *See Ready v. Berryhill*, No. CV 18-04289, 2019 WL 1934874, at *2 (E.D. Pa. Apr. 30, 2019); *Culclasure v. Comm'r of Soc. Sec. Admin.*, No. 18-1543, 2019 WL 1641192, at *12 (E.D. Penn. Apr. 16, 2019); *Bradshaw v. Berryhill*, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *2-11 (E.D.N.C. Mar. 26, 2019); *Probst v. Berryhill*, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. March 22, 2019); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 425 (M.D. Penn. 2019); *Fortin v. Comm'r of Soc. Sec.*, No. CV 18-10187, 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019), *report and recommendation rejected in relevant part*, No. 18-10187, 2019 WL 1417161 (E.D. Mich. Mar. 29, 2019); *Muhammad v. Berryhill*, No. CV 18-172, 2019 WL 2248694, at *11-12 (E.D. Pa. Nov. 2, 2018), *report and recommendation rejected*, *id.* at *3-7 (May 23, 2019).

I decline to follow decisions from district courts outside the Eighth Circuit. Every district court in the Eighth Circuit to address the issue (including the Northern District of Iowa) has found a Social Security claimant's Appointments Clause challenge raised for the first time on judicial review to be forfeited. *See Kesterson v. Berryhill*, No. 18-CV-2048-LRR, 2019 WL 1938809, at *18 (N.D. Iowa May 1, 2019) (Roberts, J.) (report and recommendation); *Sexton v. Berryhill*, No. 18-CV-1024-LTS, 2019 WL 1495286, at *15 (N.D. Iowa Apr. 4, 2019) (Roberts, J.) (report and recommendation); *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); *Murphy v. Berryhill*, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.); *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); *Audrey M.H. v. Berryhill*, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *White v. Berryhill*, No. 18-CV-2005-LTS, 2019 WL 586757, at *15 (N.D. Iowa Feb. 13, 2019) (Roberts, J.), *report and recommendation adopted*, 2019 WL 1239852 (N.D. Iowa Mar. 18, 2019); *Catherine V. v. Berryhill*, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019*)*; *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); *Davis v. Comm'r of Soc. Sec.*, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sep. 10, 2018) (Reade, J.); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018) (Reade, J.).[7] I adopt the reasoning of these decisions (and of the majority of courts to address the

---

[7] A court in the District of Nebraska noted that Appointments Clause challenges are deemed to be "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below," but ultimately, the court did not address the merits of the Appointments Clause issue, as the court was already remanding on other grounds and noted that the claimant could raise the issue on remand to the Social Security

issue). Accordingly, I recommend the district judge reject Dewbre's Appointments Clause challenge.

### III. CONCLUSION

I recommend that the district court **affirm** the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 8th day of August, 2019.

*[signature: Kelly K.E. Mahoney]*

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

Administration. *See Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018).